UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK WILLNEFF,

       Plaintiff,

v.                                                                       Case No. 08-cv-12407
                                                                   Paul D. Borman
                                                                   United States District Judge

MACOMB COUNTY,
OFFICER WILLIAM YUNKER,
OFFICER JOHN DOES, and
OFFICER JANE DOES

       Defendants.

_____/

**ORDER (1) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, and (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.  INTRODUCTION**

       This is a civil rights case.  Mark Willneff ("Plaintiff") claims that he was physically assaulted and battered on two separate occasions while he was incarcerated at the Macomb County Jail.  The first alleged incident involved Corrections Officer William Yunker ("Officer Yunker").  Plaintiff claims that the second alleged incident involved "Officer M. Dixon," *see* Plt's Amend. Comp. at ¶¶ 25-28 [Doc. No. 22], but has not named Officer Dixon as a Defendant.  Instead, Plaintiff lists various unknown individuals as Officer John Does and Officer Jane Does.  Plaintiff also asserts claims against Macomb County (the "County") (with Officer Yunker, Officer John Does and Officer Jane Does, collectively, "Defendants").

       Plaintiff's Amended Complaint, filed on June 29, 2010, asserts the following four claims

1

against Defendants:

> Count I - Violation of Civil Rights Pursuant to 42 U.S.C. § 1983 Under the Fourth and Fourteenth Amendments;
>
> Count II - Violation of Civil Rights Pursuant to 42 U.S.C. § 1983 Under the Eighth Amendment;
>
> Count III - Assault and Battery;
>
> Count IV - Intentional Infliction of Emotional Distress.

Defendants filed an Answer on July 15, 2010 [Doc. No. 24]. Now before the Court are Plaintiff's and Defendants' cross Motions for Summary Judgment, filed on July 29, 2010 [Doc. Nos. 25 and 26]. In their respective Motions, Defendants request judgment in their favor on all claims against Macomb County and Officer Yunker, and Plaintiff requests judgment in his favor on all claims against Officer Yunker. Responses were filed on August 30, 2010 [Doc. Nos. 28 and 29]. Neither party filed a Reply. Oral Argument was held on November 17, 2010.

For the reasons stated below, the Court will:

1. Deny Plaintiff's Motion for Summary Judgment;

2. Dismiss all claims arising out of the Fourth and Fourteenth Amendments;

3. Deny Defendants' Motion for Summary Judgment as to all claims against Officer Yunker;

4. Grant Defendants' Motion for Summary Judgment as to all claims against the County.

## II. BACKGROUND

Plaintiff's claims arise out of two different events. First, Plaintiff alleges that he was assaulted by Officer Yunker on June 7, 2006. Second, Plaintiff alleges that he was placed in a restraint chair and repeatedly beaten by various corrections officers on September 19, 2006.

2

### A.  The June 7, 2006 Incident

On June 7, 2006, Plaintiff was an inmate at the Southern Michigan Correctional Facility. Because of a scheduled court appearance, he was transported that morning to the Macomb County Jail.  Plaintiff claims that prior to arriving at Macomb County, his mother told him that Plaintiff's brother, also incarcerated, was scheduled to appear in court that day as well.  So when Plaintiff arrived at Macomb County and was instructed to go into the first booking cell, he instead passed the first cell and continued down the hall, looking in the other booking cells for his brother.

Officer Yunker, who was working the booking department that day, noticed Plaintiff walking down the hall without permission.  Officer Yunker approached Plaintiff, brought him into a detox cell, and questioned him.  Yunker claims that Plaintiff "kept disagreeing and arguing with him, and kept [making flinching motions towards him]."  *See* Plt.'s Ex. D - Investigative Report.  Officer Yunker admitted that he pushed Plaintiff twice.  *Id*.  Plaintiff claims that Yunker then "asked me what my problem was.  And I told him I didn't have a problem.  I said, 'It seems like you're the one with the problem.'"  *See* Willneff Dep. at 31.  Officer Yunker then slapped Plaintiff in the face.  Plaintiff claims that he was slapped twice, but Officer Yunker admits to only slapping Plaintiff once.

Plaintiff claims that this incident caused a small cut inside his mouth.  Plaintiff also claims that the assault was upsetting: "Emotionally I was really upset when I sat down.  I was crying."  Willneff Dep. at 34.  Plaintiff admits he did not require any medical attention.

### B.  The September 19, 2006 Incident

On September 19, 2006, Plaintiff was again at the Macomb County Jail for a trial date. Plaintiff claims that his mother had dropped off a suit at the jail to wear at his trial. Plaintiff also claims that an Officer Dixon escorted him from his cell at the Macomb County Jail to court. When Plaintiff requested the suit his mother had brought, he claims Officer Dixon was rude to him and shoved him. Plaintiff then said, "Don't put your hands on me." Willneff Dep. at 58. After Officer Dixon shoved him a second time, Plaintiff admits, "I went after him and started wrestling with him." Willneff Dep. at 59.

Several officers who were present helped subdue Plaintiff and place him in a detox cell. Later, Plaintiff was escorted from the detox cell to a restraint chair. This restraint chair is colloquially referred to by inmates as the "bam bam chair." *See* Affidavit of William P. Hackett at ¶ 8; Yunker Ans. To Interogs. at ¶ 3. According to Plaintiff, when an inmate is placed in this restraint chair, corrections officers place a hood on the inmates' head and periodically hit the inmate in the head while he is restrained and blinded by the hood.

Plaintiff claims that while he was restrained in the "bam bam chair," a bag was placed on his head, he was punched twice in the head, an officer pushed on the back of his neck, and various officers were verbally abusive towards him. Plaintiff had a cut over his eye which was treated by a nurse while he was restrained. However, this cut occurred earlier while Plaintiff was fighting with corrections officers. Plaintiff did not otherwise seek medical attention for any injuries he suffered as a result of this incident.[1]

---

[1] Plaintiff claims he was placed in the "bam bam chair" on another occasion while he was at the Macomb County Jail. In this instance, Plaintiff splashed a cup full of liquid on a female guard and told her that it was urine, although he now claims it was actually water. Plaintiff says he was placed in a restraint chair after this incident, but that he was not abused while he was restrained. None of Plaintiff's claims arise out of that incident.

### III.  LEGAL STANDARD

Plaintiff and Defendants have filed cross Motions for Summary Judgment pursuant to Fed. R. Civ. P. 56(c).  In deciding these Motions, the Court views the evidence and draws all reasonable inferences in favor of the party opposing summary judgment.  *Matsushita Electric Industrial Co., Ltd., et al. v. Zenith Radio Corp., et al.*, 475 U.S. 547, 587 (1986).  If a reasonable juror could return a verdict for the nonmoving party, then a genuine issue of material fact exists.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "[s]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact[.]"  *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995).

### IV.  ANALYSIS

**A.  Civil Rights Violations Under § 1983 and the Fourth and Fourteenth Amendments**

As an initial matter, the Court will address Plaintiff's Fourth and Fourteenth Amendment claims.

In Count I, Plaintiff alleges the following constitutional violations:

> a.  his right to liberty protected in the substantive component of the Due Process Clause of the Fourteenth Amendment, which includes personal safety, and right to medical care and protection.
>
> b.  his right to fair and equal treatment guaranteed and protected by the Equal Protection Clause of the Fourteenth Amendment.

Plt's Amend. Comp. at ¶ 49.  Plaintiff's counsel admits that the constitutional claims in this case arise out of events that took place while Plaintiff was incarcerated.  At oral argument on this matter, Plaintiff's counsel further admitted that the constitutional claims do not relate to Plaintiff's membership in a protected class.  The Court then clarified, and Plaintiff's counsel

conceded, that Plaintiff's constitutional claims arise under the Eighth Amendment, not the Fourth or Fourteenth Amendment. *See Ciminillo v. Streicher*, 434 F.3d 461, 464-65 (6th Cir. 2006) (noting that "[i]t is established law that if the incident out of which litigation arises is neither a search nor a seizure, an excessiv-force claim will not be analyzed under the Fourth Amendment."); *see also Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) (holding that, to make a claim under the Equal Protection Clause of the Fourteenth Amendment, a "plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class."). Accordingly, the Court will dismiss all Fourth and Fourteenth Amendments claims.

### B. Civil Rights Violations Under § 1983 and the Eighth Amendment

Plaintiff alleges that Defendants violated his Eighth Amendment protection against cruel and unusual punishment when Officer Yunker slapped him, when various unnamed officers placed him in a restraint chair and assaulted him, and when the County instituted policies that reflected deliberate indifference to this treatment. The particular claims at issue are (1) excessive force against Officer Yunker, and (2) deliberate indifference by the County.

### 1. Excessive Force

Plaintiff argues that he is entitled to summary judgment on his excessive force claim against Officer Yunker. Key to Plaintiff's argument is *Whitley v. Albers*, 475 U.S. 312 (1986), which held that an excessive force claim can survive even when a prison inmate does not suffer a serious injury. Specifically, the *Whitley* Court stated the pertinent inquiry as: "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id*. at 320-21 (citing *Johnson v. Glick*, 481 F.2d 1028,

1033 (2nd Cir. 1973)).  Plaintiff argues that the Sherriff's Office reprimand of Officer Yunker for slapping him is "clear and convincing evidence that the force used by [Officer Yunker] was NOT applied in a good-faith effort, but rather maliciously."  Plt.'s Brf. at 5 [Doc. No. 26].

Defendants argue that Plaintiff cannot prove any force used against him was "malicious and sadistic," or that his injury was more than *de minimis*.  *See Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008) (stating that "an excessive-force claimant must show something more than *de minimis* force.").  Defendants argue that the facts in *Leary*, in which a prisoner's excessive force claim was dismissed, are similar to the facts alleged in the instant case.  However, the Sixth Circuit in *Leary* focused largely on the plaintiff's deposition testimony, which downplayed the alleged use of force: "Leary himself testified at his deposition that the hit 'didn't hurt or nothing,' that he 'didn't have any injury' and that he never sought medical treatment."  *Id*.

Defendants also argue that Officer Yunker is entitled to the defense of qualified immunity.  This defense applies to government officials unless, viewing the evidence in a light most favorable to Plaintiff, the officials have violated clearly established constitutional rights.  *Jefferson v. Lewis*, 594 F.3d 454, 459 (6th Cir. 2010).  It requires a two-part inquiry: (1) was a constitutional right violated; and (2) was the right clearly established?  *Id*.  Under the "clearly established" inquiry, the evidence must show that "the right was so 'clearly established' that a reasonable official would understand that what he is doing violates that right."  *Id*. at 460 (citations omitted).  Defendants argue that "[Officer] Yunker could have reasonably, but mistakenly, believed it was necessary to use a minimal amount of physical force (i.e. the slap) in order to ensure that Plaintiff would go back to the area of the jail he was supposed to be[.]"

7

Def.'s Brf. at 11 [Doc. No. 25].

Plaintiff's Motion for Summary Judgment will be denied. According to the Investigative Report, Officer Yunker slapped Plaintiff because "[Yunker] lost his temper due to [Plaintiff's] continued arguing and failing to follow his verbal orders." Officer Yunker also admitted pushing Plaintiff two times. Officer Yunker admitted further that he omitted this information from his initial incident report. Still, in spite of this evidence, the Court is reluctant "to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance." *Whitley*, 475 U.S. at 320. Viewing the evidence in the light most favorable to Defendants, a reasonable juror could find that Officer Yunker did not act maliciously and sadistically, given that Plaintiff left his cell and walked down the hall without permission, was disagreeing and arguing with Officer Yunker, and "kept making flinching motions towards Yunker." *See* Investigative Report at 2.

Likewise, Defendants' Motion will also be denied. Defendants argue mainly that Plaintiff cannot prove that his injury was more than *de minimis*. However, it is clear that the Court cannot dismiss Plaintiff's claim based on the magnitude of his injury. *See Wilkins v. Gaddy*, --- U.S. ----, 130 S. Ct. 1175, 1177 (2010) (holding that a District Court erred by dismissing "a prisoner's excessive force claim based entirely on its determination that his injuries were '*de minimis*.'"). Rather, the extent of the injury incurred is but one of several factors the Court must consider in an excessive force claim. *Id*. at 1178. Moreover, viewing the evidence in a light most favorable to Plaintiff, a reasonable juror could find that his injury was more than *de minimis*. The Investigative Report notes that Plaintiff had "a small cut in the inside of his mouth" which was "caused by the slap." *See* Investigative Report at 1. A reasonable juror

could also find that Plaintiff suffered psychological trauma: "I was pretty shocked.  I was crying. I was upset."  Willneff Dep. at 94-95.  *See Carlton v. Turner*, No. 05-1009, 2006 WL 955886 (6th Cir. Apr. 12, 2006) (finding that plaintiff's injury was not *de minimis* even though plaintiff admitted it was not a serious injury, where officers' assaults drew blood and caused a small cut in plaintiff's head); *Wilkins*, 130 S.Ct. at 1177 (finding that an injury was more than *de minimis* where the plaintiff alleged he suffered "psychological trauma and mental anguish" in addition to physical injuries).

Regarding Defendants' qualified immunity argument, the first inquiry is whether, taking the evidence in a light most favorable to the injured party, "the facts alleged show the officer's conduct violated a constitutional right[.]" *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009).  Here, the facts show that Officer Yunker slapped Plaintiff after he "lost his temper." Taken in a light most favorable to Plaintiff, a reasonable juror could find this qualifies as "malicious and sadistic" behavior that violated Plaintiff's constitutional right.  Next, the Court considers whether the right was "clearly established."  *Id*.  The relevant inquiry "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id*.  In this case, it is likely that a reasonable officer would believe slapping an inmate in anger could be unlawful.  It is particularly worth noting that Officer Yunker omitted the slapping incident from his initial incident report.  Based on this omission, it is reasonable to infer that Officer Yunker believed he may have conducted himself unlawfully during his altercation with Plaintiff, and tried to cover up that unlawfulness by omitting certain information from his report.  Therefore, Officer Yunker is not entitled to qualified immunity.

### 2. Deliberate Indifference

9

Plaintiff alleges that "Defendant Macomb County . . . authorized, tolerated, ratified, permitted, or acquiesced in the creation of policies, practices, and customs, establishing a de facto policy of deliberate indifference to individuals such as Plaintiff[.]" Plt.'s Amend. Comp. at ¶ 62.  Defendants argue that Plaintiff has no evidence of deliberate indifference.

First, Defendants argue that Plaintiff cannot rely on *respondeat superior* liability, and must instead show a direct causal link between the County's policies or customs and the alleged constitutional deprivation, citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). Defendants also note that the County's actual administration of a training program is not material; the only relevant inquiry is whether the actual training program is "adequate." *Id*. at 390.  Defendants argue that Plaintiff has not produced any evidence of a direct causal link between the County's policies and deliberate indifference.  Defendants also argue that, because all police officers in Michigan are required to undergo a training certification program which includes instruction on constitutional use of force, Plaintiff cannot show that any officers received inadequate training.

In response, Plaintiff has produced an affidavit from Attorney William P. Hackett, an inmate in the Macomb County Jail in the 1990s, stating that he observed officers using the restraint chair, a/k/a the "bam bam chair," on two separate occasions.  Plaintiff argues that the County's failure to address this ongoing abuse amounts to deliberate indifference.

Even viewing the Hackett affidavit in a light most favorable to Plaintiff, no reasonable juror could find that Plaintiff has proven a custom or policy that would make the County liable. In *Moldowan*, the Sixth Circuit recognized "that a plaintiff may establish municipal liability by showing a policy of inadequate training or supervision, including a policy of tolerating federal

10

rights violations that is unwritten but nevertheless entrenched." 578 F.3d at 393 (punctuation and citations omitted). This liability can relate to "a systematic failure to train police officers adequately as a custom or policy[.]" *Id*. Plaintiff has not pointed to a formal, written policy that violates the Constitution, and is instead relying on allegations of a general practice among officers in the County regarding the use of restraint chairs. "In this case, where no formal policy exists, the critical question is whether there is a particular custom or practice that although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Jones v. Muskegon County, et al.*, --- F.3d ----, No. 09-2125 at *15 (6th Cir. Nov. 4, 2010) (punctuation and citations omitted). Therefore, Plaintiff must show that the County "had a custom that was so widespread, permanent, and well settled as to have the force of law." *Id*. at *16 (punctuation and citation omitted).

In *Jones*, the plaintiff alleged that the Muskegon County Jail had a custom of ignoring inmates' medical requests. *Id*. The plaintiff presented evidence of five incidents in which inmates' medical requests were ignored. The Sixth Circuit found that "a jury could not reasonably infer from these five incidents alone that the County had a widespread, permanent, and well-settled custom of ignoring inmate requests." *Id*.

In the instant case, Plaintiff has presented evidence of three incidents where the "bam bam chair" was used at the Macomb County Jail. The first two incidents allegedly took place in 1995 and 1999. Hackett Affidavit at ¶¶ 9 and 10. Hackett was not involved in those incidents. The third incident, involving Plaintiff, allegedly occurred in 2006. Willneff Dep. at 66-75. This differs from the administrative practice at issue in *Jones*. While Plaintiff should not be expected to produce evidence of numerous instances to prove a custom, a reasonable juror could not find,

based on these three alleged incidents over the course of 11 years, that Plaintiff has established "a permanent and well settled" custom that confers liability for a constitutional violation at the County level. Even viewing the evidence in a light most favorable to Plaintiff, there is no showing that any County officers, other than Officer Yunker and the unnamed corrections officers who allegedly participated in an improper use of the restraint chair. Plaintiff has not put forth claims, much less facts, that the alleged improper use was a continuing and common and well known practice among corrections officers to which the County turned a blind eye. Therefore, Plaintiff has failed to show that these incidents were "so widespread . . . as to have the force of law." *Jones*, *supra* at *16.

## C. Assault and Battery and Intentional Infliction of Emotional Distress (Counts III and IV)

Plaintiff alleges state law tort claims against both Officer Yunker and the County.

### 1. Tort Claims Against the County

Defendants argue that Plaintiff's state law claims should be dismissed because the County has governmental immunity. Defendants' argument here relies on case law holding that government employees and governmental entities are immune from tort liability as long as they are engaged in activities related to the exercise or discharge of a governmental function. *See* M.C.L. § 691.1407; *Payton v. City of Detroit*, 211 Mich. App. 375, 391-92 (1995). Plaintiff argues that governmental immunity cannot apply because "an intentional tort is not within the exercise or discharge of a governmental function." Plt.'s Brf. at 5.

There is no intentional tort exception to governmental immunity. *Payton*, 211 Mich. App. at 241. Therefore, for the County to be liable, the employee's conduct must fall outside of

a "government function." *Id*. As the Michigan Court of Appeals has stated:

> a governmental body could intentionally embark on a tortious course of conduct which would abrogate the immunity of its activity, not because it is tortious, but because it is presumably unauthorized by law and, accordingly, not a governmental function. And, of course, a governmental body could be embarked on an activity not authorized by law that is not in and of itself tortious. If, in the course of carrying out such an activity, a tort was committed, even unintentionally, it would not be immune, because the general activity is not a governmental function.

*Smith v. Department of Public Health*, 428 Mich. 540, 610 (1987). In addition, "[t]he immunity granted by the statute to a municipality is based upon the general nature of the activity of its employees, rather than the specific conduct of its employees." *Payton*, 211 Mich. App. at 241.

The operation of a county jail is a government function. The discipline of individual inmates is a government function.

The County is immune from liability resulting from Officer Yunker's actions. Placing inmates in a restraint chair comes within the government function of operating a county jail. Although the alleged behavior of individual, unnamed County officers once Plaintiff was placed in the restraint chair is abhorrent, given the limited allegations of occurrences of three occasions in 11 years, the County is immune from tort liability. Plaintiff has not established facts that support his claim that the County has a policy or practice of improper use of the restraint chair. *See Monell v. Dept. of Soc. Serv. of City of New york*, 436 U.S. 658, 691 (1978).

### 2. Tort Claims Against Officer Yunker

Defendants argue that Plaintiff has not shown that Officer Yunker's behavior was "extremely outrageous," and therefore cannot prove intentional infliction of emotional distress ("IIED"). Plaintiff responds by asserting that Officer Yunker's assault and battery constitutes

outrageous conduct. Plaintiff, in turn, argues that he is entitled to summary judgment on the assault, battery, and IIED claims. Defendants claim that Officer Yunker is entitled to qualified immunity. Defendants' Motion should be denied. For purposes of IIED, "[t]he conduct complained of must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Hayley v. Allstate Ins. Co.*, 262 Mich. App. 571, 577, 686 N.W.2d 273, 276 (2004). Viewing the evidence in the light most favorable to Plaintiff, a reasonable juror could find that intentionally slapping a person in the face, absent any provocation, is "utterly intolerable in a civilized community." *Id*.

Turning to Plaintiff's Motion, the Court has already addressed Defendants' qualified immunity argument above. Viewing the evidence in the light most favorable to Defendants, a reasonable juror could find that Officer Yunker believed he was justified in slapping Plaintiff. Thus, Plaintiff's Motion should be denied.

## V. CONCLUSION

For the reasons stated above, the Court will:

1. Deny Plaintiff's Motion for Summary Judgment;

2. Dismiss all claims arising out of the Fourth and Fourteenth Amendments;

3. Deny Defendants' Motion for Summary Judgment as to all Eighth Amendment claims against Officer Yunker;

4. Grant Defendants' Motion for Summary Judgment as to all Eighth Amendment claims against the County.

All Defendants except for Officer Yunker are dismissed from the case. The remaining

claims are the § 1983 claim arising under the Eighth Amendment, and the state law claims contained in Counts III and IV of the Amended Complaint.

**SO ORDERED.**

S/Paul D. Borman<br>PAUL D. BORMAN<br>UNITED STATES DISTRICT JUDGE

Dated:  January 5, 2011

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on January 5, 2011.

S/Denise Goodine<br>Case Manager